## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Cooks Venture, Inc.,<br>　　　　Debtor. | Chapter 7<br><br>Case No. 24-10828-KBO |
| In re:<br><br>Cooks Venture Poultry, Inc.,<br>　　　　Debtor. | Chapter 7<br><br>Case No. 24-10829-KBO |
| In re:<br><br>Cooks Venture Poultry Jay, Inc.,<br>　　　　Debtor. | Chapter 7<br><br>Case No. 24-10830-KBO<br><br>**Hearing Date: May 8, 2024 (Requested)**<br><br>**Objection Deadline:  At or prior to the Hearing** |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS
FREE AND CLEAR OF ALL LIENS OTHER THAN ASSUMED LIABILITIES;
(II) APPROVING THE TRUSTEE'S ENTRY INTO THE ASSET PURCHASE
AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Alfred T. Giuliano, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (collectively, the "Debtors"), respectfully moves for entry of an Order: (I) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Encumbrances other than Assumed Liabilities; (II) Approving the Debtors' Entry Into the Asset Purchase Agreement; and (III) Granting Related Relief (the "Sale Motion"); and in support states as follows:

**RELIEF REQUESTED**

1.　　The Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Order"): (i) authorizing the sale (the "Sale") of substantially all of the Debtors' assets free and clear of all Liens other than Assumed Liabilities (each as defined in the APA (as defined herein); (ii) approving the Trustee's entry into the Asset Purchase Agreement by

and between Bel's Poultry, LLC (the "Purchaser") and the Trustee, dated April 19, 2024 (the "APA"); and (iii) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction to consider this Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Sale Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Trustee consents, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Sale Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4. The statutory bases for the relief requested herein are sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"); rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and rules 2002-1 and 6004-1 of the Local Rules.

## BACKGROUND

**I.    The Debtors and the Prepetition Sale Process**

5. On April 19, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in this Court. The Trustee was appointed as the chapter 7 trustee for these cases on April 19, 2024.

6. The Debtors are a vertically integrated poultry company focused on regenerative farming practices in Decatur, Arkansas, where they raise their own proprietary Pioneer breed of heritage chicken. While certain of the Debtors' commercial operations ceased in 2023, they maintain an in-house pedigree research and development program to refine and select desirable attributes to further enhance the Pioneer breed, which delivers superior taste, durability, and higher quality meat through a non-GMO and antibiotic-free growing process.

7. In 2023, the Debtors were continuing to incur operating losses and needed to raise capital to shore up their liquidity position, so they began working with investment banker Harrison Co. to raise capital to support their capital expenditure plan and fund operating losses. However, the capital raise was unsuccessful, so the Debtors began the process of preserving assets for a potential sale of their business. With the assistance of Newlight Capital, the Trustee is informed by the Debtors that forty-one (41) potential purchasers were initially contacted to gauge their interest in purchasing the Debtors' assets. Of those forty-one, the Trustee is advised by the Debtors that twenty-seven (27) signed non-disclosure agreements and were given access to information about the Debtors. However, because of process concerns, the Debtors' board made the decision to engage Accordion, a financial advisor, to help advise and facilitate the marketing and sale process.

8. The Trustee has been advised that Accordion expanded Newlight's list of potential buyers to 115 and launched a process to communicate with those buyers about purchasing the Debtors or their assets. According to the Debtors, Accordion prepared a process letter, a teaser, and set up a virtual data room with financial and other information about the Debtors and their assets to support the due diligence efforts of potential acquirors. In addition, the Trustee has been advised that Accordion professionals and 'one of the Debtors' executives attended the

3

International Production & Processing Expo, a large poultry industry conference in Atlanta, GA on January 30, 2024 to meet with potential buyers and industry contacts and to communicate that the Debtors or their assets were for sale.

9. Of the 115 potential buyers, the Debtors have advised the Trustee that thirty-five (35) signed non-disclosure agreements, and twenty (20) accessed the virtual data room to review the available due diligence information. As a result of their marketing process, the Debtors informed the Trustee that they received nine (9) bids, some of which were for discrete assets, such as a piece of packaging equipment or a tract of land. After reviewing the bids, the Trustee has been advised that the Debtors' board determined that the Purchaser's bid was the highest value with the highest likelihood of closing.

## II. The Asset Purchase Agreement

10. Following good faith, arm's-length negotiations, the Trustee has now reached an agreement on behalf of the Estates with the Purchaser for the Sale of certain of the Debtors' assets under section 363 of the Bankruptcy Code on the terms and conditions set forth in the APA. Certain material terms of the APA, and certain provisions of the APA that are required to be highlighted pursuant to Local Rule 6004-1(b)(iv), are described below:[1]

| Material Terms of the APA[2] ||
|---|---|
| **Purchaser** | Bel's Poultry, LLC |
| **Purchase Price** (APA § 2.5) | The aggregate consideration for the sale and transfer of the Acquired Assets shall be (a) USD $7,100,000.00 (as may be adjusted pursuant to Section 2.6 below, collectively, the "Closing Cash") plus (b) the assumption by Purchaser of the |

---

[1] Any summary of the APA contained herein is qualified in its entirety by the actual terms and conditions of the APA. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the APA, the actual terms and conditions of the APA shall control in all respects.

[2] Capitalized terms used in this table and not otherwise defined herein shall have the meanings ascribed to such terms in the APA.

| | |
|---|---|
| | Assumed Liabilities, including payment of the Cure Amounts (items (a) and (b) collectively, the "Purchase Price"). |
| **Acquired Assets**<br><br>(APA § 2.1) | (a)    all interests in real property (including any leasehold interests) as set forth in Schedule 2.1(a), together with all plants, buildings, structures, fixtures and improvements of all kinds situated thereon, and all privileges, rights, easements, hereditaments and appurtenances belonging to or for the benefit of such real property (collectively, "Real Property");<br><br>(b)    all supplies (including packaging materials), materials, machinery, equipment (including equipment that is subject to a capital lease, but only to the extent that Purchaser assumes such capital lease as an Assigned Contract), rolling stock, farm products, tools, vehicles, furniture, fixtures, furnishings, leasehold improvements, goods, and other tangible personal property owned by Sellers, including, but not limited to, any owned computer hardware and software (collectively, "Personal Property");<br><br>(c)    all Inventory, including all prepaid inventory (shipped and unshipped);<br><br>(d)    all Intellectual Property, including the live poultry parent stock for the Pioneer breed of chicken;<br><br>(e)    all prepaid expenses, advances and deposits, excluding Accounts Receivable and prepaid expenses, advances and deposits allocable to Executory Contracts and Unexpired Leases that are not Assigned Contracts;<br><br>(f)    all causes of action of the Estates relating to the Acquired Assets or arising under express or implied warranties from suppliers or other third parties with respect to the Acquired Assets, except for Estate Causes of Action;<br><br>(g)    all books and records of the Estates relating to the Acquired Assets, including production records, accounting records, Tax records, financial records, property records, mailing lists, and customer and vendor lists, provided that Sellers may obtain, at their own expense, copies of any or all such books and records before their transfer to Purchaser;<br><br>(h)    all Contracts, agreements, licenses, leases, warranties, commitments, and purchase and sale orders with respect to Personal Property, Intellectual Property, Real Property or otherwise (collectively, "Executory Contracts and Unexpired |

5

| | |
|---|---|
| | Leases"), solely to the extent that such Executory Contracts and Unexpired Leases are listed on Schedule 1.1(h) as designated by Purchaser to be assumed and assigned on the Closing Date in accordance with the APA and provided further that Purchaser shall have provided adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code with respect to any designated contract (collectively, "Assigned Contracts"), together with the right to receive income in respect of such Assigned Contracts on and after the Closing Date, and any causes of action which may be brought by Sellers relating to past or current breaches of the Assigned Contracts;<br><br>(i)    all Governmental Authorizations and all pending applications therefor or renewals thereof, in each case to the extent transferable to Purchaser and excluding Governmental Authorizations or pending applications therefor required for the continued operation of an Excluded Asset; and<br><br>(j)    all other assets, properties and rights identified on Schedule 1.1(i). |
| **Assumed Liabilities**<br>(APA § 2.3) | Upon the terms and subject to the conditions set forth in the APA, at the Closing, Purchaser shall assume and shall timely perform and discharge in accordance with their respective terms (a) all Liabilities and Cure Amounts with respect to the Assigned Contracts, (b) all Liabilities (including for any Tax) that arise on or after the Closing Date with respect to Purchaser's ownership or operation of the Acquired Assets on and after the Closing, and (c) such other Liabilities of Sellers set forth on Schedule 2.3 after the Closing Date (collectively "Assumed Liabilities"). |
| **Excluded Assets**<br>(APA § 2.2) | (a)    all cash, bank deposits, securities and cash equivalents, including for this purpose, all cash and cash equivalents if credited to Sellers' bank accounts prior to the Closing Date;<br><br>(b)    all Contracts, agreements, licenses, leases, warranties, commitments, and purchase and sale orders with respect to Personal Property, Intellectual Property, Real Property or otherwise and the rights associated therewith other than the rights under Executory Contracts and Unexpired Leases assumed as provided in Section 2.1(h) which are not Assigned Contracts;<br><br>(c)    all Employee Benefit Plans; |

6

| | |
|---|---|
| | (d)  all Accounts Receivable (including any credit card receivables) associated with periods prior to Closing; |
| | (e)  all corporate minute books and records of internal corporate proceedings, stock transfer ledgers, blank stock certificates, corporate seals, tax and accounting records, work papers and other records relating to the organization or maintenance of the legal existence of each Seller; |
| | (f)  any books, records or other information related solely and exclusively to the Excluded Assets; |
| | (g)  all records that the Estates are required by law to retain; |
| | (h)  all refunds or credits or deposits of Taxes with respect to the period prior to the Closing Date, including without limitation any refunds, credits or deposits of Taxes arising as a result of Sellers' operation of the Business or ownership, operation, utilization or maintenance of the Acquired Assets prior to the Closing Date; |
| | (i)  all Estate Causes of Action; |
| | (j)  all equity interests, or interests convertible into or exchangeable for equity interests, held by any Seller including any such interests of any Seller in another Seller; and |
| | (k)  all other assets, properties and rights identified on Schedule 1.1(k). |
| **Excluded Liabilities** (APA § 2.4) | Purchaser, by its execution and delivery of the APA and the Ancillary Agreements and its performance of the transactions contemplated by the APA and the Ancillary Agreements (the "Transactions"), shall not assume or otherwise be responsible for any Liability other than the Assumed Liabilities. |
| **Sale to Insider** (L.R. 6004-1(b)(iv)(A)) | The Purchaser is not an insider of the Debtors as defined in Bankruptcy Code section 101(31). |
| **Agreements with Management** (L.R. 6004-1(b)(iv)(B)) | None. |
| **Releases** (L.R. 6004-1(b)(iv)(C)) | The APA does not contain releases. |

| | |
|---|---|
| **Private Sale**<br><br>(L.R. 6004-1(b)(iv)(D)) | The Trustee is seeking approval of a private sale, without an auction process. For the avoidance of doubt, however, the Trustee is not foreclosing any alternatives that might be put forth for the Debtors' assets and accordingly shall implement Bidding Procedures (as defined below). |
| **Closing**<br><br>(APA § 3.1; L.R. 6004-1(b)(iv)(E)) | Subject to the terms and conditions the APA, the closing (the "Closing") of the sale and purchase of the Acquired Assets and the assumption of the Assumed Liabilities shall take place on or before May 10, 2024 (unless otherwise agreed by Seller and Purchaser), at a location to be specified by Seller or remotely if agreed by Seller and Purchaser. The time and date upon which the Closing occurs is referred to herein as the "Closing Date." All transactions at the Closing shall be deemed to take place simultaneously and none shall be deemed to have taken place until all shall have taken place. |
| **Good Faith Deposit**<br><br>(APA § 2.6; L.R. 6004-1(b)(iv)(F)) | Purchaser shall deposit with the Trustee $710,000.00, representing ten percent (10%) of the Purchase Price (the "Deposit"). The Deposit is to be held by the Trustee in a separate designated Trustee account maintained for deposits in these bankruptcy cases. If the APA is terminated for any reason, the Deposit shall be returned to the Purchaser. |
| **Interim Arrangements with Purchaser**<br><br>(L.R. 6004-1(b)(iv)(G)) | The APA does not anticipate that the Trustee will enter into any interim agreements or arrangements with the Purchaser. |
| **Use of Proceeds**<br><br>(L.R. 6004- 1(b)(iv)(H)) | The APA does not contain any provision pursuant to which the Trustee proposes to release sale proceeds on or after the closing without further Court order, or to provide for a definitive allocation of sale proceeds between or among various sellers or collateral. |
| **Tax Exemption**<br><br>(L.R. 6004-1(b)(iv)(I)) | The APA does not contain any provision seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code. |
| **Preservation of Books and Records**<br><br>(APA § 6.2; L.R. 6004-1(b)(iv)(J)) | From the Closing Date through and including the second anniversary of the Closing Date, Purchaser shall grant Sellers, the Trustee, and their respective representatives reasonable access to the books and records transferred to Purchaser pursuant to the APA during regular business hours and upon reasonable notice for the purpose of allowing Sellers or their successors, the Trustee or their respective representatives to perform the duties necessary for the liquidation of the Debtors' Estates. |

| | |
|---|---|
| **Sale of Avoidance Actions** (APA § 2.2; L.R. 6004-1(b)(iv)(K)) | The Trustee does not seek to sell or otherwise limit its rights to pursue avoidance claims under chapter 5 of the Bankruptcy Code. |
| **Break-Up/Topping Fees and Expense Reimbursement** (APA § 7.4; L.R. 6004-1(c)(i)(C)(2)) | In the event that the Estates sell the Acquired Assets to a third-party that is not affiliated with Purchaser (an "Alternative Transaction"), in consideration for Purchaser having expended considerable time and expense in connection with the APA and the negotiation thereof, the Estates shall pay to Purchaser a break-up fee in an amount equal to five percent (5%) of the Closing Cash (the "Break-Up Fee") and up to $250,000.00 USD in actual documented fees and expenses incurred in connection with the APA (the "Expense Reimbursement"); provided that the Break-Up Fee and Expense Reimbursement shall be payable concurrently with the consummation of, and only out of the cash proceeds of, the Alternative Transaction. |
| **No Successor Liability** L.R. 6004-1(b)(iv)(L)) | The APA does not contain any provision limiting the Purchaser's successor liability; provided, however, the proposed Sale Order contains customary findings concerning the absence of successor liability. |
| **Sale Free and Clear** (APA § 4.4); L.R. 6004-1(b)(iv)(M)) | The Trustee is requesting authority to transfer good title in the Debtors' interest in the Acquired Assets free and clear of all liens, other than the Assumed Liabilities, to the fullest extent permissible under section 363(f) of the Bankruptcy Code. |
| **Credit Bid** (L.R. 6004- 1(b)(iv)(N))) | Credit bidding is inapplicable. |
| **Relief from Bankruptcy Rule 6004(h)** (L.R. 6004-1(b)(iv)(O)) | The Trustee is requesting relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). |

**III.   Bidding Procedures and Opportunity to Submit Higher and Better Offers**

11.    While the Trustee believes that the Sale to the Purchaser as contemplated by the APA reflects the best and highest offer that the Trustee has received as of the date hereof, the Trustee will follow the following bidding procedures (the "Bidding Procedures")

   a.    The Trustee will serve a copy of this Sale Motion on all parties who previously expressed any interest in the Debtors' assets, or the Trustee believes would have

9

any real interest in acquiring the Debtors' assets.

    b. Any party wishing to submit a competing bid to purchase the Acquired Assets must submit a non-contingent, all-cash offer for an amount greater than the Purchase Price submitted using and substantially in the same form as the APA attached hereto as **Exhibit B** (a "Qualified Bid") no later than two days prior to the commencement of the Sale Hearing to the following: (a) Alfred T. Giuliano, Giuliano, Miller & Company, LLC, 2301 E. Evesham Road, 800 Pavilion, Suite 210, Voorhees, NJ 08043, atgiuliano@giulianomiller.com, (b) Cozen O'Connor, Attn: John T. Carroll III, 1201 North Market Street Suite 1001 Wilmington, DE 19801, (302) 295-2028, Jcarroll@cozen.com (c) Faegre Drinker, Attn: Laura E. Appleby, 1177 Avenue of the Americas, 41st Floor New York, New York 10036, (212) 248-3197 laura.appleby@faegredrinker.com and (d) UMB Bank National Association, Attn: Bennett Murphy, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017, bennettmurphy@quinnemanuel.com.

    c. If the Trustee receives a Qualified Bid, he will hold an auction for the Acquired Assets on a date to be determined (the "Auction"). The auction may be adjourned from time to time with notice only to the Purchaser and parties submitting a Qualified Bid. The Purchaser and each party submitting a Qualified Bid will be provided by the Trustee information necessary to attend the Auction.

    d. The Trustee will name the successful bidder (the "Successful Bidder") at the conclusion of the Auction. The Successful Bidder will have 24 hours after the conclusion of the Auction to sign a Purchase and Sale Agreement substantially in the form attached hereto as **Exhibit B** and make payment to the Trustee of an earnest money deposit in an amount representing ten percent (10%) of the Purchase Price. Failure to do

so will result in the second highest bidder (the "<u>Back-Up Bidder</u>") being considered the Successful Bidder.

    e.  The Trustee will present the Successful Bidder for approval at the sale hearing (the "<u>Sale Hearing</u>").  The party receiving Court approval of its bid will be considered the "Purchaser" under this Sale Motion and will have five (5) days to close on the sale.

    f.  Deposits will be returned to each non-Successful Bidder by the Trustee via wire transfer within five (5) days of closing of the sale with the Purchaser.

<b><u>BASIS FOR RELIEF REQUESTED</u></b>

**I.  The Sale Reflects a Sound Exercise of the Trustee's Business Judgment.**

12.  Section 105(a) of the Bankruptcy Code provides: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In pertinent part, Bankruptcy Rule 6004 states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Fed. R. Bankr. P. 6004(f)(1).

13.  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World*

11

*Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale, and the transaction is in good faith).

14. The Trustee submits that his decision to consummate the Sale with the Purchaser represents a reasonable exercise of the Trustee's business judgment, such that the Sale should be approved under sections 105(a) and 363(b) of the Bankruptcy Code. After the Debtors' prepetition marketing efforts, which included the canvassing of 115 potential buyers, elicited only one offer for substantially all of the Debtors' assets, the Trustee has determined, in his business judgment, that the Purchase Price is the highest and best offer for the Acquired Assets. However, as noted above, the Trustee will continue to market the Debtors' assets postpetition and will provide other potential purchasers with the ability to submit a binding proposal to the Trustee within two days of the hearing to approve the Sale. Subject to any higher or better offers received prior to the Sale Hearing, the Trustee submits that the Purchase Price is fair and reasonable under the circumstances of these chapter 7 cases. In light of the foregoing, the Trustee believes that the Sale should be approved as a sound exercise of the Trustee's business judgment.

15. Furthermore, the Sale is the best way to preserve local jobs and prevent the needless waste of live poultry. Without the success of the Sale, the Trustee will likely have to euthanize nearly 100,000 live poultry currently owned by the Debtors, destroying nearly fifteen years of research and development behind the Pioneer breed chicken. Finally, a sale that does not include the live poultry will likely lead to additional job loss in and around the Debtors' properties.

**II.**   **Notice of the Sale Hearing is Reasonable and Appropriate.**

16. Bankruptcy Rule 2002(c)(1) states, in pertinent part, that the notice of a proposed

12

use, sale or lease of property shall include the terms and conditions of any private sale and the deadline for filing objections and shall generally describe the property. The Trustee has provided (or will timely provide) adequate notice of the Sale to Notice Parties, as identified below, through e-mail addresses known to the Trustee and/or first class U.S. mail. *See* Fed. R. Bankr.P. 2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed for filing objections."); *see also Delaware & Hudson Ry.*, 124 B.R. at 18. The Trustee submits that the information contained herein satisfies these notice requirements.

### III. The Trustee May Sell the Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests.

17. In accordance with section 363(f) of the Bankruptcy Code, a trustee may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (1) such a sale is permitted under applicable nonbankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f).

18. The Trustee believes the Sale meets one or more of the foregoing conditions with respect to any entity that may assert an interest in the Acquired Assets. Furthermore, the Notice Parties (as defined below) will be served with a copy of the Sale Motion and will have the opportunity to object and be heard, including with respect to any asserted lien or other interest in the Acquired Assets. To the extent any entity believes it holds a lien or other interest in the Acquired Assets and does not object to the Sale Motion, or whose objections are otherwise resolved, such entity will be deemed to have consented to the relief sought in the Sale Motion

pursuant to section 363(f)(2).  Moreover, to the extent any such lien or interest is valid and the holder does not consent, the Trustee believes that the holder of such lien or interest could be compelled to accept a money satisfaction of such interest, or the Trustee will otherwise be able to satisfy the requirements of section 363(f).  Furthermore, bankruptcy courts have recognized the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, *6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  Accordingly, the Trustee requests that the Sale be approved "free and clear," with any liens, claims, encumbrances, and interests to attach to the proceeds of the Sale with the same validity, extent, and priority, and subject to the same rights and defenses, as existed immediately prior to the Sale.

### IV. The Purchaser should be Entitled to the Protections of Bankruptcy Code Section 363(m).

19.     The Trustee additionally requests that the Court find that the Purchaser is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the Acquired Assets if the order allowing the sale is reversed on appeal.

20. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 813, 839 (D.N.J. 1995). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus. Mach. Corp.*, 572 F.2d at 1198).

21. As required by section 363(m) of the Bankruptcy Code, the Trustee believes that the Purchaser has acted in good faith in negotiating the terms of the Sale. Based upon the Trustee's information and belief, there is no evidence of fraud or collusion. The Purchaser is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and, to the best of the Trustee's knowledge, all negotiations were conducted on an arm's-length, good faith basis. Accordingly, under the circumstances, the Purchaser should be afforded the benefits and protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

## **WAIVER OF BANKRUPTCY RULE 6004(h)**

22. Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of

Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Here, to maximize the value of the Estates, it is important that closing occur on an expedited basis. Accordingly, the Trustee requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **NOTICE**

28.     Notice of this Sale Motion will be provided to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel to the Debtors; (iii) counsel to the Purchaser; (iv) counsel to UMB Bank National Association as Indenture Trustee; (v) the Debtors' twenty (20) largest unsecured creditors on a consolidated basis as listed in the Debtors' schedules of assets and liabilities filed with the Court; (vi) the Debtors' secured creditors, as listed on schedule D of the Debtors' schedules of assets and liabilities filed with the Court; (vii) the Internal Revenue Service, (viii) all applicable federal, state, and local taxing and regulatory authorities known by the Trustee to have jurisdiction over all or part of the Acquired Assets; (ix) the counterparties to executory contracts or unexpired leases, if any, proposed to be assumed and assigned via the Sale; (x) the United States Department of Justice and applicable state attorneys general; (xi) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (xii) any other parties known by the Trustee to have expressed an interest in a transaction with respect to all or part of the Acquired Assets, and/or known by the Trustee to potentially possess and/or assert an interest in all or part of the Acquired Assets. In light of the nature of the relief requested, the Trustee submits that no further notice need be given.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter the Sale Order, and grant such other relief as is just and proper under the circumstances.

Dated: April 22, 2024  
Wilmington, DE

COZEN O'CONNOR

By: */s/ John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

*Proposed Counsel for the Trustee, Alfred T. Giuliano*