IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br> Cooks Venture, Inc., <br> Debtor. | Chapter 7 <br> Case No. 24-10828 (KBO) |
| In re: <br> Cooks Venture Poultry, Inc., <br> Debtor. | Chapter 7 <br> Case No. 24-10829 (KBO) |
| In re: <br> Cooks Venture Poultry Jay, Inc., <br> Debtor. | Chapter 7 <br> Case No. 24-10830 (KBO) |

**INDENTURE TRUSTEE'S RESPONSE TO EMERGENCY MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE, FOR AN ORDER: (I) AUTHORIZING THE TRUSTEE TO CONTINUE LIMITED OPERATION OF THE DEBTORS' BUSINESS PURSUANT TO 11 U.S.C. § 751 THROUGH AND INCLUDING MAY 10, 2024; (II) AUTHORIZING ON AN INTERIM BASIS THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND THE OBTAINING OF SECURED POST-PETITION FINANCING ON A SECURED AND SUPERPRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, AND (III) SCHEDULING A FINAL HEARING ON THE USE OF CASH COLLATERAL AND POST-PETITION FINANCING UNDER BANKRUPTCY RULE 4001**

UMB Bank, National Association ("UMB Bank"), in its capacity as the indenture trustee of the Cooks Venture, Inc. Fixed Rate Senior Notes, Series 2023-C, by and through its undersigned counsel, submits this response ("Response")[1] in support of the *Emergency Motion of Alfred T. Giuliano, Chapter 7 Trustee, for an Order: (I) Authorizing the Trustee to Continue Limited Operation of the Debtors' Business Pursuant to 11 U.S.C. § 751 through and including May 10, 2024, (II) Authorizing on an Interim Basis the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and the Obtaining of Secured Post-Petition Financing on a Secured and Superpriority Basis Pursuant to 11 U.S.C. § 364, and (III) Scheduling a Final Hearing on the Use of Cash Collateral*

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Financing Motion (as defined herein).

and Post-Petition Financing Under Bankruptcy Rule 4001* [Case No. 24-10828 (KBO), Docket No. 10] (the "Financing Motion") and in opposition to that certain objection to the Financing Motion by Cooks CA [Case No. 24-10828 (KBO), Docket No. 20] (the "Objection").

In support of its Response, UMB Bank, for purposes of a final hearing on the Financing Motion, relies on the *Declaration of Anthony McIntyre in Support of Indenture Trustee's Response to the Emergency Motion of Alfred T. Giuliano, Chapter 7 Trustee, for an Order: (I) Authorizing the Trustee to Continue Limited Operation of the Debtors' Business Pursuant to 11 U.S.C. § 751 through and including May 10, 2024, (II) Authorizing on an Interim Basis the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and the Obtaining of Secured Post-Petition Financing on a Secured and Superpriority Basis Pursuant to 11 U.S.C. § 364, and (III) Scheduling a Final Hearing on the Use of Cash Collateral and Post-Petition Financing Under Bankruptcy Rule 4001*, filed concurrently herewith (the "Servicer Declaration"). In further support of its Response, UMB Bank respectfully states as follows:

## BACKGROUND

**A.    Series 2023-C Notes Financing**

1.    On June 5, 2023, Debtor Cooks Venture, Inc. (the "Issuer") issued those certain Fixed Rate Senior Notes, Series 2023-C in the aggregate face amount of $60,000,000 (the "2023 Notes"). The 2023 Notes are governed by a Trust Indenture (the "Trust Indenture") by and among the Issuer and UMB Bank, as indenture trustee (the "Indenture Trustee"). The proceeds of the 2023 Notes were loaned to the Issuer pursuant to the terms of a Proceeds Disbursing and Security Agreement, also dated as of June 5, 2023 (the "PDSA"), by and between (i) UMB Bank, solely in its capacity as disbursing agent (the "Disbursing Agent"), solely in its capacity as Indenture Trustee, (ii) Newlight Capital LLC, as servicer for the benefit of the Indenture Trustee (the

2

"Servicer"), and (iii) the Issuer and Debtors Cooks Venture Poultry, Inc. and Cooks Venture Poultry Jay, Inc., each as co-obligors (collectively, the "Debtor Co-Obligors"). True and correct copies of the PDSA and Indenture and are attached to the Servicer Declaration as Exhibits A and B, respectively.

2. As security for their obligations under the PDSA and Indenture, each Debtor Co-Obligor granted the Servicer (as representative and for the benefit of the Indenture Trustee on behalf of the holders of the 2023 Notes) a continuing security interest in substantially all of their assets. The Servicer's perfected, first priority liens in the Debtors' assets are evidenced by the financing statements, control agreement, and mortgages referred to in paragraphs 13–16 of the Servicer Declaration and attached thereto as Exhibits C, D, and F, respectively.

3. The obligations in respect of the 2023 Notes are, by a wide margin, the Debtor Co-Obligors' largest secured claim and greatly exceed the proposed $7.1 million purchase price for substantially all of the Debtor Co-Obligors' assets. *See* Case No. 24-10828 (KBO), Docket No. 13.

**B.      The Rescue Financing and Proposed Post-Petition Financing**

4. In the weeks leading up to the Petition Date, the Indenture Trustee, acting at the direction of the beneficial owners of the 2023 Notes (the "Noteholders"), agreed to loan over $1,000,000 held in the trust estate under the Trust Indenture (and otherwise reserved to service the obligations due on the 2023 Notes) to the Debtor Co-Obligors to finance the Debtors' operations and ensure sufficient feed was available to keep the Debtor Co-Obligors' large stock of poultry alive (the "Rescue Financing").

5. In addition to the Rescue Financing, the Debtor Co-Obligors requested that the Noteholders provide post-petition financing that would allow the consummation of a sale of substantially all of their assets through a chapter 7 process. The Noteholders and Indenture Trustee

worked expeditiously with Debtor Co-Obligors' counsel and counsel to the chapter 7 trustee (the "Trustee") prior to the Petition Date to ensure post-petition funds would be available to bridge the Debtors to a sale. The terms of the post-petition financing are set forth in the Financing Stipulation attached to the Financing Motion as Exhibit A.

**C.     Cooks CA LLC's Objection**

6.      Shortly before the April 23, 2024, hearing on the Financing Motion, Cooks CA LLC ("Cooks CA") filed its Objection. Cooks CA objects to the Trustee's use of cash collateral and entry into the Financing Stipulation with the Indenture Trustee on the basis that it possesses liens senior to the Servicer's liens on the assets of Cooks Venture, Inc. and therefore the Trustee must obtain the consent of Cooks CA or provide Cooks CA with adequate protection before the Trustee may use cash collateral or grant the proposed priming liens to secure the post-petition financing offered at the direction of the Noteholders by the Indenture Trustee. *See* Obj. ¶¶ 7–14.

## ARGUMENT

7.      The Debtors were unable to find financing on terms better than those offered by the Indenture Trustee. *See* Financing Motion ¶ 6. As established below, to the extent that Cooks CA has a valid, perfected, unavoidable security interest in any assets of Cooks Venture, Inc., Cooks CA is not entitled to adequate protection because the Servicer's liens securing the 2023 Notes are senior to those of Cooks CA and, as Cooks CA acknowledges in its Objection, the amount due on the 2023 Notes greatly exceeds the value of the Debtor Co-Obligors' estates.

8.      Cooks CA has not provided any evidence of a valid and enforceable subordination agreement. *See* Obj. ¶ 5. In fact, the Servicer has never signed an agreement in which the Servicer agreed to subordinate its liens or the payment priority of the obligations due under the PDSA or on the 2023 Notes to any party, including Cooks CA. Servicer Decl. ¶ 17. Cooks CA has offered

no evidence to the contrary. When asked to substantiate its position, Cooks CA provided counsel to the Trustee and the Indenture Trustee with a November 16, 2023 email purporting to contain an agreement to subordinate the Servicer's liens. The email was, in itself, the purported agreement and attached no executed agreement of any kind. The email was not addressed to, nor did it include, the Indenture Trustee. A copy of that email, which was provided by counsel to Cooks CA to counsel for the Indenture Trustee on April 24, 2024, is attached hereto as **Exhibit A**.

9. Under the PDSA, any agreement that would permit the incurrence of the purported indebtedness owed to Cooks CA or allow the Servicer to subordinate its rights to another lender needed to be (a) in writing, and (b) signed by (i) the Servicer, (ii) the Disbursing Agent, and (iii) each Debtor Co-Obligor, which is a fact that Cooks CA, who was obviously aware of the existence of the 2023 Notes, should have known.[2] Specifically, the PDSA provides:

> No amendment or waiver of any provision of this Agreement or any other Disbursement Document, and no consent with respect to any departure by any Co-Obligor therefrom, shall be effective unless the same shall be in writing and signed by the Servicer, Disbursing Agent and Co-Obligors, and in the case of any waiver, such waiver shall be effective only in the specific instance and for the specific purpose for which given.

Servicer Decl, Ex, B, PDSA § 13.5.

10. The November 16, 2023 email does not satisfy these conditions. Not only was the alleged email agreement unsigned by the Servicer, but the Disbursement Agent was not even included in the communication and did not sign the purported agreement.

11. Even assuming *arguendo* that it is possible to subordinate over $60,000,000 of debt based only on an unsigned email that fails to outline the specific terms of the subordination,[3] the

---

[2] In particular, absent an amendment or waiver, the covenants under Sections 7.4 (Indebtedness), 7.5 (Encumbrances), and 6.18 (Maintenance of Perfected Security Interest) of the PDSA, among potentially other provisions of the transaction documents, prohibited the incurrence of the purported loan by Cooks CA and the alleged subordination of the Servicer.

[3] For instance, it is unclear whether the subordination purports to be an agreement to subordinate liens or an agreement to subordinate payments, an important distinction in any subordination agreement.

November 16, 2023 email exchange is unenforceable. It fails to meet the basic requirements of the Indenture and PDSA, documents of which Cooks CA was or should have been aware.

## CONCLUSION

For the reasons set forth herein and in the Servicer Declaration, the Indenture Trustee respectfully requests that the Court overrule the Objection, enter the order granting the Financing Motion and approving the Financing Stipulation, and grant any such other and further relief as the Court deems just and proper.

Dated:  April 25, 2024                                          **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Jaclyn C. Marasco*
Jaclyn C. Marasco (Bar No. 6477)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4222
Facsimile: (302) 467-4201
jaclyn.marasco@faegredrinker.com

Laura E. Appleby (admitted *pro hac vice*)
Kyle R. Kistinger
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
(212) 248-3197
laura.appleby@faegredrinker.com
kyle.kistinger@faegredrinker.com

*Counsel for UMB Bank, National Association*