## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Cooks Venture, Inc., | ) | Case No. 24-10828-KBO |
| | ) | |
| Debtor. | ) | |
| In re: | ) | Chapter 7 |
| | ) | |
| Cooks Venture Poultry, Inc., | ) | Case No. 24-10828-KBO |
| | ) | |
| Debtor. | ) | |
| In re: | ) | Chapter 7 |
| | ) | |
| Cooks Venture Poultry Jay, Inc., | ) | Case No. 24-10828-KBO |
| | ) | |
| Debtor. | ) | |
| Cooks CA LLC | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| -against- | ) | Adv. Pro. No. 24- |
| | ) | |
| UMB Bank, N.A. | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

## COMPLAINT

Plaintiff Cooks CA LLC ("**Cooks CA**" or "**Plaintiff**"), by and through its counsel, as and for its Adversary Proceeding Complaint against UMB Bank, N.A. ("**UMB**" or "**Defendant**"), states as follows:

### NATURE OF THE ADVERSARY PROCEEDING

1. Cooks CA brings this adversary proceeding for a declaratory judgment as to the enforceability of the binding Subordination Agreement (as defined below) between Cooks CA and UMB, which agreement affects the distribution of assets of the Debtors' estates (as defined below).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because it concerns the administration of the bankruptcies (the "**Main Proceedings**") and the bankruptcy estates of the above-captioned Debtors. Plaintiff consents to the entry of a final order or judgment by the Court in this matter.

3. Venue is proper in this district under 28 U.S.C. § 1409(a) because it is related to the Main Proceedings that are currently pending under Chapter 7 of the Bankruptcy Code and in this District.

4. This adversary proceeding is commenced pursuant to Bankruptcy Rule 7001 and Section 510 of the Bankruptcy Code.

## THE PARTIES

5. Plaintiff is a Delaware limited liability company.

6. UMB is a national banking association with its principal office located at 1010 Grand Blvd., Kansas City, Missouri 64106.

## FACTS

I. The CA Loan and the Subordination Agreement.

7. Cooks CA has a senior secured interest in certain of the assets of debtors Cooks Venture, Inc. ("**Cooks Venture**") and Cooks Venture Poultry, Inc. (together with Cooks Venture Poultry Jay, Inc., "**Debtors**") resulting from a subordination agreement made by the holders of the Note Obligations (as defined below) in favor of Cooks CA.

8. Specifically, on or about November 28, 2023, Cooks Venture entered into that certain Secured Convertible Promissory Note (the "**Note**") pursuant to which it agreed to repay to

Cooks CA the sum of $1,500,000.00 (the "**CA Loan**"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

9. Among other things, the Note also specifically states that any collateral granted to Plaintiff to secure the CA Loan will be in accordance with a subordination agreement between Plaintiff and Newlight (as defined below), as servicer for the benefit of UMB. *See* Note, § 2.

10. To secure the CA Loan, Cooks Venture granted Cooks CA a first priority security interest in and to all of its assets and any proceeds thereof.

11. To further secure the CA Loan, Debtor Cooks Venture Poultry, Inc., an affiliate of Cooks Venture, granted Cooks CA a first priority mortgage in its real property.

12. Cooks CA provided the CA Loan to Cooks Venture to allow Cooks Venture and the other Debtors to, among other things, preserve their assets and maintain their businesses at a time in which Debtors were facing financial distress.

13. On information and belief, Debtors used the CA Loan proceeds to, among other things, pay for feed for their chickens and fund their payroll obligations.

14. At the time of making the CA Loan, Cooks CA was aware of certain loans provided to Debtors, which obligations were arguably secured by some or all of the prepetition assets of Debtors (the "**Note Obligations**").

15. Upon information and belief, UMB serves as the indenture trustee and disbursing agent with respect to the Note Obligations.

16. Newlight Capital LLC ("**Newlight**") is the servicer of the Note Obligations on behalf of UMB. During all times relevant, Newlight acted as the representative for and on behalf of UMB.

17. Upon information and belief, Newlight's role is memorialized in that certain Trustee Services Agreement, dated on or about June 5, 2023, by and between UMB and Newlight, pursuant to which Newlight performs certain services and actions on behalf of UMB with respect to the Note Obligations.

18. In addition, that certain Proceeds Disbursing and Security Agreement, dated June 5, 2023, executed by and between UMB, Newlight, and Debtors (the "**PDSA**") contemplates that Newlight may enter into subordination agreements with respect to the Note Obligations. *See* PDSA, § 8.10. A copy of the PDSA is attached hereto as **Exhibit B**.

19. Cooks CA relied on Newlight's position as servicer and authorized agent for and on behalf of UMB with respect to the Note Obligations in negotiating directly with UMB.

20. Given that the Note Obligations may have been secured by some or all of Debtors' assets, in order for Cooks CA to provide the CA Loan, Cooks CA required a subordination of the Note Obligations to the CA Loan.

21. Therefore, in mid-November 2023, Randall Lewis, a managing partner of Cooks CA's parent company, held a call with Joe Agiato, the Chief Executive Officer of PIUS Limited, LLC ("**PIUS**").

22. Upon information and belief, PIUS is the direct or indirect owner of Newlight.

23. During this call, Mr. Lewis expressly told Mr. Agiato that Cooks CA would not fund the CA Loan unless the Note Obligations were subordinated to the CA Loan.

24. Thereafter, on November 16, 2023, Mr. Lewis, on behalf of Cooks CA, again told Mr. Agiato, on behalf of Newlight through his capacity as CEO of PIUS, via email, that Cooks CA would only fund the CA Loan if the Note Obligations were subordinated to the CA Loan.

25. This requirement is consistent with the language in the Note.

26. In this email, Mr. Lewis further stated that Newlight had already agreed to such subordination and that he understood that a subsequent, more formal subordination agreement was expected to follow.

27. Mr. Lewis ended by requiring that Mr. Agiato, on behalf of Newlight, "Please confirm your agreement."

28. Several minutes later, Mr. Agiato, on behalf of Newlight, "Agreed", thereby providing written consent to the Subordination Agreement on behalf of the holders of the Note Obligations.

29. As such, this email served as a subordination agreement between the parties (the "**Subordination Agreement**"). A copy of the Subordination Agreement is attached hereto as **Exhibit C**.

30. Given that the parties agreed to subordinate the entire Note Obligations' "loan facility", the Subordination Agreement effectuates both a lien and debt subordination of the Note Obligations to the CA Loan in favor of Cooks CA.

II.  The Debtors' Bankruptcies

31. Thereafter, on April 19, 2024, Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code.

32. That same day, Alfred T. Giuliano was appointed as the chapter 7 trustee in these cases ("**Trustee**").

33. On or about April 19, 2024, Trustee and UMB entered into that *Stipulation Concerning Post-Petition Financing* (the "**Financing Stipulation**"). This Court authorized Trustee to enter into the Financing Stipulation on April 26, 2024 [Docket No. 48].

34. Pursuant to the Financing Stipulation, among other things: (a) UMB agreed to provide certain post-petition financing to Trustee, (b) UMB and Trustee agreed to distribute the proceeds of any sale first to repay any post-petition financing provided by UMB and second on a 15%-85% basis between Trustee for benefit of the Debtors' estates and UMB for the Note Obligations; and (c) UMB and Trustee agreed to create a disputed claims reserve in the amount of $973,717.44, held by Trustee, for any disputed secured claims alleged to be senior to the Note Obligations.

35. On April 22, 2024, Trustee filed his: (a) *Emergency Motion for an Order: (I) Authorizing the Trustee to Continue Limited Operation of Debtors' Business Pursuant to 11 U.S.C. § 721 Through and Including May 10, 2024, (II) Authorizing on an Interim Basis the Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and the Obtaining of Secured Post-Petition Financing on a Secured and Superpriority Basis Pursuant to 11 U.S.C. § 364, and (III) Scheduling a Final Hearing on the Use of Cash Collateral and Post-Petition Financing Under Fed. R. Bankr. P. 4001* [Docket No. 10] (the "Cash Collateral and Financing Motion"); and (b) *Motion for Entry of an Order: (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens Other Than Assumed Liabilities; (II) Approving the Trustee's Entry into the Asset Purchase Agreement; and (III) Granting Related Relief* [Docket No. 13] (the "**Sale Motion**").

36. On April 23, 2024, Cooks CA filed its *Objection to the Cash Collateral Motion* [Docket No. 20] (the "**Cash Collateral and Financing Objection**").

37. Cooks CA objected to the Cash Collateral and Financing Motion because, among other things: (a) Cooks CA's consent to use cash collateral was not sought; and (b) Cooks CA wanted to ensure that the securing of post-petition financing did not deprive Cooks CA of its rights in Debtors' collateral pursuant to, among other things, the Subordination Agreement.

4870-1262-9948, v. 3

- 7 -

38. On April 25, 2024, UMB filed its *Response to the Cash Collateral and Financing Motion* [Docket No. 39] (the "**Cash Collateral and Financing Response**").

39. In the Cash Collateral and Financing Response, UMB, among other things, argued that the Subordination Agreement was not binding because: (a) Newlight did not physically sign the Subordination Agreement; and (b) the Subordination Agreement did not satisfy the modification provision of the PDSA.

40. Plaintiff is not a party to the PDSA.

41. On May 8, 2024, Cooks CA filed its *Objection to the Sale Motion*.

42. Cooks CA objected to the Sale Motion because the Sale Motion did not account for the Subordination Agreement with respect to the distribution of proceeds from any ensuing sale and the reserve created by the Financing Stipulation was insufficient to satisfy the amounts owed under the CA Loan.

43. Although it is clear that the Subordination Agreement was duly agreed to by UMB's authorized agent, Newlight, UMB refuses to acknowledge the enforceability of the Subordination Agreement.

44. This refusal not only serves to prejudice Cooks CA, but it interferes with the administration of the Main Proceedings and creates unnecessary costs for Trustee, the bankruptcy estates, and this Court.

**FIRST CAUSE OF ACTION**
(Declaratory Judgment)

45. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

46. Plaintiff and UMB, through its authorized agent Newlight, entered into the Subordination Agreement to determine the payment and lien priorities between the CA Loan and the Note Obligations.

47. However, in certain filings in the Main Proceedings UMB has taken the position that the Subordination Agreement is not binding.

48. The effectiveness and enforceability of the Subordination Agreement affects the distribution of assets in the Main Proceedings because Cooks CA and UMB are Debtors' primary creditors, each asserting an interest in Debtors' assets and the proceeds therefrom.

49. As a result, there is a real and actual controversy as to whether the Subordination Agreement is enforceable and, if so, its effects on the distributions in the Main Proceedings.

50. Plaintiff, therefore, seeks declaratory judgment confirming that: (a) the Subordination Agreement is enforceable and binding on Plaintiff and UMB; and (b) the Subordination Agreement confers lien and payment priority to Plaintiff.

**SECOND CAUSE OF ACTION**
(Subordination of the Note Obligations Pursuant to Bankruptcy Code § 510(a))

51. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. Although the Subordination Agreement does not contain a choice of law, written subordination agreements are routinely upheld throughout the country.

53. As such, the Subordination Agreement is a written, binding subordination agreement that is enforceable pursuant to applicable nonbankruptcy law.

54. Therefore, Cooks CA is entitled to a judgment enforcing the Subordination Agreement and subordinating the Note Obligations to the CA Loan.

4870-1262-9948, v. 3

## THIRD CAUSE OF ACTION
(Subordination of the Note Obligations Pursuant to Bankruptcy Code § 510(c))

55. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

56. Plaintiff relied on the subordination of the Note Obligations and the Subordination Agreement in making the CA Loan.

57. Plaintiff informed Newlight, orally and in writing, that Plaintiff was relying on the Subordination Agreement in making the CA Loan.

58. UMB, through its authorized agent Newlight, had actual or constructive knowledge of Cooks CA's reliance on the Subordination Agreement in making the CA Loan.

59. UMB is nonetheless seeking to avoid being bound by the Subordination Agreement, to the detriment of Cooks CA and to UMB's unjust benefit.

60. The Court can and should avoid injustice to Cooks CA by equitably subordinating the Note Obligations to the CA Loan.

**WHEREFORE**, Plaintiff demands judgment as follows:

a) On the First Cause of Action, declaratory judgment confirming that: (a) the Subordination Agreement is enforceable and binding on Plaintiff and UMB; and (b) the Subordination Agreement confers lien and payment priority to Plaintiff;

b) On the Second Cause of Action, a judgment subordinating the Note Obligations to the CA Loan;

c) On the Third Cause of Action, a judgment subordinating the Note Obligations to the CA Loan; and

d) Such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: May 8, 2024<br>Wilmington, Delaware | **CHIPMAN BROWN CICERO & COLE, LLP**<br><br>*/s/ William E. Chipman, Jr.*<br>William E. Chipman, Jr. (No. 3818)<br>Hercules Plaza<br>1313 North Market Street, Suite 5400<br>Wilmington, Delaware 19801<br>Telephone: (302) 295-0191<br>Email:    chipman@chipmanbrown.com<br><br>—and—<br><br>Jason J. DeJonker, Esquire<br>William S. Hackney, Esquire<br>**SEYFARTH SHAW LLP**<br>233 South Wacker Drive<br>Suite 8000<br>Chicago, Illinois 60606<br>Telephone: 312.604.5000<br>Email:    jdejonker@seyfarth.com<br>            whackney@seyfarth.com<br><br>*Counsel for Cooks CA LLC* |